Matter of Geneva Worldwide, Inc. (Commissioner of Labor) (2022 NY Slip Op 01862)





Matter of Geneva Worldwide, Inc. (Commissioner of Labor)


2022 NY Slip Op 01862


Decided on March 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 17, 2022

533252
[*1]In the Matter of Geneva Worldwide, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:February 16, 2022

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Greenberg Traurig, LLP, New York City (Jerrold F. Goldberg of counsel), for appellant.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for respondent.



Pritzker, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed October 28, 2020, which revised the unemployment insurance contribution rate of Geneva Worldwide, Inc.
Under New York law, the standard unemployment insurance contribution tax rate for employers is 5.4% of all wages paid (see Labor Law § 570 [1]). In conjunction therewith, "Labor Law § 581 establishes an experience-rating system that allows for variations in the unemployment insurance contribution rates from the standard rate of qualified employers in certain situations" (Matter of PLS Check Cashiers of N.Y. Inc. [Commissioner of Labor], 197 AD3d 1464, 1464 [2021] [internal quotation marks and citations omitted]). The Commissioner of Labor maintains an account for each employer liable for unemployment insurance contributions, and such account is credited with contributions made by the employer and is debited by the amount of any unemployment insurance benefits paid out (see Labor Law § 581 [1] [d], [e]). In the event that an employer's account has a negative balance of more than 21% of the wages subject to contributions, the negative balance in excess thereof is transferred as a charge to the general account maintained by the Unemployment Insurance Fund (see Labor Law § 581 [1] [e] [6]). Additionally, if such negative balance and transfer occurs within three payroll years preceding the computation date (see Labor Law § 581 [1] [a]), the "employer's rate of contribution shall be the maximum contribution rate" as set forth in the statute (Labor Law § 581 [2] [a]; see Labor Law § 581 [1] [f]). However, the affected employer may reduce its contribution rate by making a voluntary contribution to its account in excess of what is required — provided that such contribution is made by March 31 of the year at issue (see Labor Law § 581 [1] [d] [4]). Consistent with the statutory scheme, and in February of each year, the Department of Labor sends each employer a notice informing the employer of its contribution rate for that year. The Department also sends each employer an explanation of the contribution rate, which, among other things, advises the employer of its right to make a voluntary contribution to its account and of the need to make such contribution prior to March 31 in order to change the contribution rate for the year at issue. Against that backdrop, we turn to the matter before us.
Geneva Worldwide, Inc. is an entity based in New York City that provides translating and interpreting services to various clients. Both Geneva and, as of 2008, the Department considered Geneva's interpreters and translators — collectively denominated by Geneva as linguists — to be independent contractors and, as such, Geneva did not include the linguists' wages when making contributions for unemployment insurance. In 2011, a negative balance transfer in the amount of $12,246.29 was made from Geneva's employer's account to the general account, prompting the Department to assess Geneva [*2]at the maximum contribution rate of 8.9% for the years 2012 through 2014.[FN1] There is no dispute that the Department advised Geneva of the revised contribution rate and of its ability to make a voluntary contribution to its employer's account,[FN2] which, in turn, may have reduced the contribution rate. Geneva, however, opted not to make a voluntary contribution by the applicable March 31 deadline — concluding, given the base wages upon which it anticipated its contributions would be calculated — that it was not in its financial interest to do so.
In 2015, the Unemployment Insurance Appeal Board ruled that one of Geneva's interpreters was an employee.[FN3] That decision, in turn, prompted an audit of Geneva's unemployment insurance contributions, as a result of which the Department — applying the maximum contribution rate to the remuneration paid to Geneva's linguists — assessed an additional $160,000 unemployment insurance contributions against Geneva for 2014. The record reflects that Geneva first questioned the basis for the 2014 contribution rate in 2017 and sought a hearing in this regard in early 2019. Following the requested hearing, an Administrative Law Judge (hereinafter ALJ) denied Geneva's request to reduce its contribution rate/experience rating charge for 2014. The Board affirmed the ALJ's decision, noting that Geneva was aware of the negative balance transfer and of its ability to make a voluntary contribution to reduce the contribution rate for 2014. This appeal ensued.
We affirm. The Board's determination, "if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d 1373, 1375 [2017] [internal quotation marks and citation omitted]; see Matter of Doster [Fundamental Labor Strategies-Commissioner of Labor], 187 AD3d 1255, 1257 [2020], lv dismissed 37 NY3d 936 [2021]). Similarly, the Board's interpretation of a statute that it is charged with administering will be upheld if such interpretation is rational (see Matter of Chmiel [Magno Sound-Sweeney], 236 AD2d 686, 687 [1997]; Matter of Hodges [Hartnett], 171 AD2d 206, 208 [1991], lv denied 79 NY2d 753 [1992]). As the ALJ aptly observed, Geneva's challenge to the maximum contribution rate assessed and/or the amount of additional contributions due, which is grounded in its belief that its linguists are independent contractors, is equitable in nature. Specifically, Geneva contends that, at the time that the negative balance was incurred and the corresponding opportunity to make a voluntary contribution was presented, it had no way of anticipating the Department's subsequent change of heart relative to the classification of Geneva's linguists. As such, Geneva's argument continues, it could not properly have gauged the true economic impact of either the contribution rate/experience rating [*3]assessed or its decision to opt out of making a voluntary contribution and, therefore, should not now be penalized for the Department's subsequent conclusion that the linguists' wages should be included for purposes of calculating Geneva's unemployment insurance contributions.
The flaw in Geneva's argument on this point is twofold. First, neither the Department's classification of Geneva's relationship with its linguists nor the reasonableness of Geneva's reliance upon the Department's pre-2015 interpretation thereof is the issue presently before this Court. Rather, the sole issue presented to the ALJ and the Board was whether Geneva was entitled to a reduction in its contribution rate/experience rating for 2014. More to the point, Geneva's argument overlooks the fact that the statutory scheme at issue does not make allowances for equitable considerations. Where, as here, an employer's account has a negative balance of more than 21% of the wages subject to contributions, the negative balance in excess thereof is transferred as a charge to the general account maintained by the Unemployment Insurance Fund (see Labor Law § 581 [1] [e] [6]). Should such negative balance and transfer occur — as it did here — within three payroll years preceding the relevant computation date (see Labor Law § 581 [1] [a]), the "employer's rate of contribution shall be the maximum contribution rate" as set forth in the statute (Labor Law § 581 [2] [a]; see Labor Law § 581 [1] [f]). Notably, and as this Court previously has observed, neither the Department nor the Commissioner has any authority to deviate from the contribution rate set forth in the statute (see Matter of Perk Dev. Corp. [Sweeney], 227 AD2d 777, 778 [1996]; Matter of R.C. Shaheen Paint Co. [Hartnett], 162 AD2d 888, 888-889 [1990]). Hence, once Geneva incurred a negative balance and failed to make a voluntary contribution, the statute required that Geneva be assessed at the maximum contribution rate — regardless of any perceived inequities in this regard (cf. Matter of People Care [Hartnett], 170 AD2d 864, 864-865 [1991]). As the Board's interpretation and application of Labor Law § 581 was rational, we discern no basis upon which to disturb its determination. Geneva's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The total contribution rate for 2014, which is the specific year at issue in this appeal, was 9.5%, consisting of the maximum contribution rate of 8.9%, subsidiary contributions at the rate of 0.525% and re-employment service fund contributions at the rate of 0.075%.

Footnote 2: Although the actual notices issued to Geneva were unavailable, Geneva does not dispute receiving them.

Footnote 3: According to the Commissioner of Labor, Geneva did not perfect its appeal from the Board's decision, and the issue of whether Geneva's linguists are employees or independent contractors remains a point of contention.